UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CHRISTOPHER JOHNSON,　　　　　　　　　　　FIRST AMENDED
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　COMPLAINT

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　21 cv 5268 (PKC)

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　ECF Case

　　　　　　　　　　　Plaintiff,

　　　vs.

The CITY OF NEW YORK,
NEW YORK CITY POLICE OFFICERS
STEVEN POUPOS, JOSEPH DAVIN,
and JOHN DOES 1-2　　　　　　　　　　　　　　　　　JURY TRIAL DEMANDED
in their individual and official capacities,

　　　　　　　　　　　Defendants.
-------------------------------------------------------------x

Plaintiff Christopher Johnson, by his attorney, Cyrus Joubin, complaining of the

Defendants, respectfully alleges as follows:


**PRELIMINARY STATEMENT**

1. This action arises from civil rights violations against Christopher Johnson

("Plaintiff") by New York City police officers.  Plaintiff asserts constitutional claims

pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for

unlawful strip search, violation of due process, failure to intervene, and a *Monell* claim

against the City of New York for the same constitutional violations.  Plaintiff seeks

compensatory and punitive damages, injunctive and declaratory relief, costs,

disbursements, and attorney's fees pursuant to applicable state and federal civil rights

law.

**JURISDICTION**

1

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments of the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (a)(4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

3. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

4. Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

5. Plaintiff is a twenty-seven-year-old Hispanic male and a lifelong resident of New York City. He has been arrested approximately twenty-five times in New York City.

6. The individually named defendants Steven Poupos (Shield 19217), Joseph Davin (Shield 899), and Police Officers John Does 1-2 ("PO Doe 1" and "PO Doe 2") (collectively, the "individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

7. On the date of the incident giving rise to this complaint, the individual defendants were assigned to the NYPD 32nd Precinct.

8. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law,

[comment: CYRUS JOUBIN 11/2/2021 2:03 PM Deleted: 2]

in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

9. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## STATEMENT OF FACTS

10. On February 13, 2020, at approximately 1 a.m., Plaintiff was sitting in the passenger seat of his friend Danny Vega's car. Vega was driving and planning to drop Plaintiff off in Harlem, New York City.

11. At approximately 1 a.m., near the intersection of 5th Avenue and 130th Street in Harlem, police officers from the NYPD 32nd Precinct – including individual defendants Davin and Poupos – stopped Vega's vehicle.

12. Just a few minutes before, other officers from the 32nd Precinct had stopped the vehicle and issued Vega tickets for driving with excessively tinted windows. When Vega explained this and showed the officer the tickets, the officers ordered Vega and Plaintiff to exit the vehicle.

13. The officers – including defendants Davin and Poupos – arrested Plaintiff and Vega outside the vehicle.

14. The officers claimed to have found a bag of marijuana and a knife inside the vehicle; none of these items belonged to Plaintiff.

15. The officers transported Plaintiff to the 32nd Precinct where they booked and processed him, fingerprinted and photographed him, and detained him in a holding cell.

16. Plaintiff had three ecstasy pills in a plastic bag in the fly / gusset region of his boxer shorts as well as Viagra pills in his pants pockets.

17. Plaintiff admitted to having the pills in his boxers after one of the officers patted Plaintiff down, felt something in his boxers, and asked Plaintiff what it was.

18. When the pills were found in Plaintiff's boxers, one of the defendant officers asked him if he was hiding anything in his butt, which Plaintiff denied doing.

19. Four police officers – including defendants Davin and Poupos – then proceeded to strip search Plaintiff, cutting his underwear with a knife, making Plaintiff bend over, and looking inside Plaintiff's buttocks to see if any contraband was hidden.

20. Nothing unlawful was found in Plaintiff's buttocks.

21. At no point prior to this body cavity search did any officer see Plaintiff conceal or attempt to conceal anything in his buttocks or anywhere else on his body.

22. At no point prior to the body cavity search were any of the individual defendants informed that Plaintiff concealed, or attempted to conceal, anything in his buttocks or elsewhere on his body.

23. After the strip search, Plaintiff was detained in the 32nd Precinct for several hours, then transported to Central Booking in lower Manhattan, where was processed, photographed, searched, and detained in various holding cells for over fifteen hours, until, about twenty-four hours after his arrest, Plaintiff was brought before the presiding Judge in New York County Criminal Court, formally arraigned, then released on his own recognizance.

24. Plaintiff should have been released from the 32nd Precinct with a Desk Appearance Ticket ("DAT") because as of January 1, 2020, due to New York's Bail

4

Elimination Act of 2019 – specifically the amendment of N.Y. Criminal Procedure Law Section 150.20) ("CPL 150.20") – NYPD officers were required to ("shall") issue an "appearance ticket" (i.e., a DAT) to almost all people arrested for misdemeanor offenses (and for various felony offenses), unless certain exceptions apply, as delineated in CPL 150.20(1)(b)(i-viii) ("An officer is not required to issue an appearance ticket if [] (i) the person has one or more outstanding…warrants; (ii) the person has failed to appear in court proceedings in the last two years…."). In amending CPL 150.20, the New York legislature replaced the word "may" with the word "shall," creating a mandatory DAT rule.

25. By its express terms, the Bail Elimination Act of 2019 had the following "Purpose": "To end the use of monetary bail, reduce unnecessary pretrial incarceration and improve equity and fairness in the criminal justice system." *See* Bill Number S2101A, available at: www.nysenate.gov/legislation/bills/2019/s2101.

26. Plaintiff had a liberty interest in being released with a DAT. He was eligible for a mandatory DAT under the terms of CPL 150.20.

27. In deciding not to issue Plaintiff a DAT, the defendant officers did not apply the express language of CPL 150.20. Instead, they used the NYPD Desk Appearance Ticket Investigation sheet – a document known as "PD 360-091" [Rev 05-09] – which has its own criteria for denying DATs, criteria that do not align with the exceptions listed in CPL 150.20(1)(b).

28. The following checklist is taken from the DAT Investigation form that the defendant officers filled out for Plaintiff. The reason Plaintiff was denied a DAT

5

("Photographable Offense") is *not* a basis to deny someone a DAT under the language of CPL 150.20).

```
REASONS DAT WAS DENIED
☐  1  OUTSTANDING WARRANT                          ☐ 11 DESIGNATED RECIDIVIST PROGRAM (attach copy of
☐  2  RESIDES OUT OF STATE                               FINEST warrant check)
☑  3  UNABLE TO VERIFY ADDRESS                     ☐ 12 DESIGNATED VEHICLE OFFENSES AS PER PATROL
☑  4  PHOTOGRAPHABLE OFFENSE                             GUIDE AND INTERIM ORDER
☑  5  FAMILY OFFENSE                                ☐ 13 VIOLATION OF AN ORDER OF PROTECTION OR
☐  6  UNABLE TO VERIFY IDENTIFICATION                    IMMEDIATE NEED TO SECURE ONE
☐  7  ARREST FOR CRIMINAL SALE OF MARIHUANA 4th or 5th ☐ 14 HARASSMENT 1st OR MENACING 2nd, STALKING
      DEGREE                                             OFFENSES
☐  8  UNDER THE INFLUENCE OF DRUGS / MARIHUANA TO   ☐ 15 CHILD ABUSE, NEGLECT, MALTREATMENT
      THE DEGREE THAT HE MAY ENDANGER HIMSELF OR   ☐ 16 CRIMINAL TRESPASS 3rd (Commercial Premises)
      OTHERS                                        ☐ 17 UNLAWFUL EVICTION
☐  9  ASSAULT 3rd, ATTEMPTED ASSAULT 3rd, MENACING, ☐ 18 RESISTING ARREST
      AGGRAVATED HARASSMENT, RECKLESS               ☐ 19 OBSTRUCTING GOVERNMENTAL ADMINISTRATION
      ENDANGERMENT 2nd DEGREE WHEN COMMITTED             2nd (Not Uncooperative Actions)
      AGAINST A CITY/STATE ENFORCEMENT AGENT        ☐ 20 INTERFERENCE WITH PROFESSIONAL SPORTING
      PERFORMING OFFICIAL DUTY                           EVENT (A.C. 10-162)
☐ 10  ARREST FOR INTOX / IMPAIRED DRIVING --        ☐ 21 OWES DNA
      VTL sec 1192 sub 1,2,3,4
```

29. The NYPD has been exclusively, and as a matter of policy (as articulated in the NYPD Patrol Guide), using its DAT Investigation form for over ten years. The NYPD has not modified its DAT issuance/denial criteria notwithstanding the clear and mandatory statutory language in CPL 150.20. Accordingly, to this day, NYPD officers continue to deny DATs for deserving arrestees because they follow their own criteria rather than following duly enacted law.

30. In the late evening of February 13, 2020, nearly twenty-four hours after his arrest, Plaintiff was arraigned in New York County Criminal Court on Docket No. CR-003943-20NY, charged with Criminal Possession of a Weapon in the Fourth Degree for allegedly possessing a knife and billyclub recovered from the vehicle.

31. Plaintiff was released on his own recognizance at his arraignment and later accepted an Adjournment in Contemplation of Dismissal ("ACD") to resolve his criminal court case.

**DELIBERATE ACTS UNDER COLOR OF STATE LAW**

32. All of the aforementioned acts of the individual defendants, their agents, servants and employees, were carried out under the color of state law in the course and scope of their duties.

33. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments of the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

34. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments of the United States Constitution.

**FAILURE TO TRAIN AND SUPERVISE**

35. Upon information and belief, the individual defendants' aforementioned abuse of power was not an isolated event. There were other instances of misconduct by the individual defendants that Defendant City knew or should have known about.

36. The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

**THE NYPD'S DAT INVESTIGATION FORM**

37. As evidenced by the arbitrary basis on which Plaintiff was denied a DAT – "Photographable Offense" – the NYPD's DAT Investigation form bases DAT issuance/denial decisions on factors completely unrelated to – indeed, in conflict with – the duly enacted statutory language of CPL 150.20.  Because CPL 150.20 creates a liberty interest in being issued a DAT, the NYPD's still-exclusively-used DAT Investigation form justifies the denial of DATs on the NYPD's own executive wisdom rather than the criteria clearly laid out in the criminal procedure law.

**NYPD'S STRIP SEARCH POLICY**

38. Moreover, there has been an over-aggressive and illegal strip search policy in the NYPD, a policy that favors strip-searching low-level, mere possessors of drugs.

39. If the aggressive strip-searching is not an explicit policy of the NYPD, then it is a rampant and recklessly tolerated practice, flagrantly abused, sadistically embraced as a humiliating practice that rarely bears fruit.

40. Since 2014, Plaintiff's lawyer alone – Cyrus Joubin – has filed and settled seven other lawsuits in the Southern District of New York against NYPD officers claiming illegal anal cavity searches on the plaintiffs.

41. Those lawsuits – all of which settled with the illegal strip search claims intact – included Lorenzo v. City of New York, et al., 14 cv 9865 (ALC); Siler v. City of New York, et al., 15 cv 189 (ER); Beverly v. City of New York, et al., 15 cv 2315 (GHW); Ramirez v. City of New York, et al., 15 cv 1589 (PAE); and Williams v. City of New York, et al., 15 cv 8008 (DLC).  In Ortiz v. City of New York, 16 cv 2922 (LTS), as well as Stoute v. City of New York, 18 cv 5004 (AKH), plaintiffs Ortiz and Stoute accepted

Rule 68 Offers of Judgment. In none of those cases was any contraband discovered in the plaintiffs' body cavities.

42. In addition, Cyrus Joubin has settled numerous other claims against the City of New York involving illegal strip searches – including Romulo Paulino v. City of New York (BLA # 2016-PI-017471), Kenneth McRae v. City of New York (BLA # 2016-PI-026652), Michael Johnson v. City of New York (BLA # 2016-PI-016917), Joshua Williams v. City of New York (BLA # 2018-PI-014953), and Katiria Martinez v. City of New York (BLA # 2018-PI-019512) – which claims were settled prior to filing suit.

43. There is no documentation that NYPD officers must complete when conducting a strip search; rather, officers merely check a box, and there is no oversight or scrutiny to ensure that officers have a lawful basis to perform strip searches and that officers truthfully indicate that they performed strip searches.

44. Because of this lack of accountability, unlawful strip searches have become a widespread custom and practice in the NYPD, as evidenced by numerous civil rights lawsuits alleging unlawful body cavity searches. *See e.g. Hill v. City of New York*, 19-CV-7882 (PKC); *see also,* "Data suggests thousands of cases of New York police officers breaking department guidelines, but consequences are rare," by Tana Ganeva, published Jun 21, 2021, available at businessinsider.com/new-york-police-break-department-guidelines-often-without-consequence-2021-6 (noting "multiple lawsuits allege that officers ignored [strip search] protocols, conducting strip searches on site, in front of other officers and civilians, and without meeting the standard for proving the invasive search was necessary. While some are pending, the ones that have been settled have collectively resulted in payments of almost half a million dollars to plaintiffs.").

45. There is no evidence that the NYPD has done anything to correct what has been deemed a "Strip Search Problem." *See* "The NYPD Has a Strip Search Problem," By Anna North, published Feb. 21, 2012, available at jezebel.com/the-nypd-has-a-strip-search-problem-5885116; "Man arrested, strip-searched after photographing NYPD wins $125,000," by David Kravets, published Aug. 19, 2014, available at artstechnica.com/tech-policy/2014/08/man-arrested-strip-searched-after-photographing-nypd-wins-125000/; "Man Sues NYPD Over Cop With 'Fetish' for Cavity Searches," by Nathan Tempey, published February 14, 2017, available at gothamist.com/news/man-sues-nypd-over-cop-with-fetish-for-cavity-searches; "This NYPD cop kept being promoted despite 'inappropriate strip searches' of Black men," by Francis Akhalbey, published Sept. 11, 2020, available at face2faceafrica.com/article/this-nypd-cop-kept-being-promoted-despite-inappropriate-strip-searches-of-black-men.

**DAMAGES**

46. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

   a. Violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution;
   b. Severe emotional trauma, distress, degradation, and suffering.

## SECTION 1983 CLAIMS

### FIRST CLAIM

**Illegal Strip Search Under Section 1983**

38. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

39. By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free of unlawful searches of his person.

40. The body cavity search of Plaintiff – an extreme invasion of privacy and bodily dignity – took place without probable cause to believe that a weapon or contraband was secreted in his anus.

41. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### Denial of Due Process Under Section 1983

42. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

43. By the actions described, the Defendants deprived Plaintiff of his Fourteenth Amendment right to due process of law.

44. Rather than release Plaintiff with a DAT – as required by New York State law – the individual defendants, exercising arbitrary discretion rather than following a process, prolonged Plaintiff's detention by keeping him detained through his criminal court arraignment.

45. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Failure to Intervene Under Section 1983

46. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

47. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

48. The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

49. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Municipal Liability Under Section 1983

50. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

51. By the actions described, the Defendant City deprived Plaintiff of his Constitutional rights through its failure to train, supervise, and discipline malicious and mendacious officers; through the NYPD's use of a DAT Investigation form that conflicts with CPL 150.20 and deprives people of their liberty interest in a DAT without due process; and through its tolerance of illegal body cavity searches by NYPD officers.

52. As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

a. A declaration that CPL 150.20 creates a liberty interest in being released with a DAT;

b. A declaration that the City's continuing use of the NYPD's DAT Investigation form to make DAT issuance/denial decisions violates due process;

c. An order awarding compensatory damages for Plaintiff Christopher Johnson in an amount to be determined at trial;

d. An order enjoining and directing Defendant City of New York to establish clear guidelines in the NYPD's use of body cavity searches, including a requirement that officers document and articulate the reason for each body cavity search;

e. An order enjoining and directing Defendant City of New York to make DAT issuance/denial decisions based on CPL 150.20's statutory framework, rather than the NYPD's own criteria;

f. An order awarding punitive damages in an amount to be determined at trial;

g. A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

h. Such other and further relief as this Court may deem appropriate.

DATED:    November 2, 2021                    /s/
          New York, New York            CYRUS JOUBIN, ESQ.

43 West 43rd Street, Suite 119
New York, NY 10036
(703) 851-2467
joubinlaw@gmail.com
Attorney for Christopher Johnson