UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHRISTOPHER JOHNSON,

                            Plaintiff,

                                                            21-cv-5268 (PKC)

                -against-                          OPINION AND ORDER


THE CITY OF NEW YORK,
OFFICER STEVEN POUPOS,
OFFICER JOSEPH DAVIN, and
JOHN DOES 1-2,

                            Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

           Plaintiff Christopher Johnson brings section 1983 claims against defendants

Steven Poupos and Joseph Davin, officers of the New York City Police Department ("NYPD")

(the "Individual Defendants"), and the City of New York.[1]  42 U.S.C. § 1983.  Johnson

principally claims that he was deprived of rights protected by the Constitution when he was

arrested and detained, rather than given a desk appearance ticket, and given a visual body cavity

search.  Defendants move to dismiss the Amended Complaint for failure to state a claim under

Rule 12(b)(6), Fed. R. Civ. P.  For reasons that will be explained, the motion will be granted.

---

[1] Plaintiff also named two unidentified officers as John Doe defendants.  Although Johnson sought and was granted leave to amend his Complaint, he did not identify the officers who are the John Doe defendants in the Amended Complaint.  The ninety-day period to serve defendants under Rule 4(m), Fed. R. Civ. P., has expired.  The John Doe defendants will be dismissed from the action without prejudice.

BACKGROUND

For purposes of the motion, the Court accepts the Amended Complaint's well-pleaded factual allegations as true, drawing all reasonable inferences in favor of the non-movant, Johnson.  In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).

The Amended Complaint alleges that in the early morning of February 13, 2020, Johnson was driving with a friend in that friend's car through Harlem.  (First Am. Compl't ("FAC") (Doc 14) ¶ 10.)  At around 1 a.m., Johnson and his friend were pulled over by NYPD officers Steven Poupos and Joseph Davin for driving with excessively tinted windows.  (FAC ¶ 11.)  The Amended Complaint alleges that Johnson and his friend, the owner of the car, were ticketed for the same infraction by different NYPD officers minutes before being pulled over by Poupos and Davin.  (Id. ¶ 12.)  Johnson's friend explained this situation to Poupos and Davin, but they instructed Johnson and his friend to exit the vehicle and arrested them both.  (Id. ¶¶ 12-13.)  Poupos and Davin "claimed" to find a bag of marijuana and a knife upon searching Johnson's friend's car.[2]  (Id. ¶ 14.)

Poupos and Davin brought Johnson to the 32nd precinct where he was processed, fingerprinted, photographed and detained in a holding cell.  (Id. ¶ 15.)  The officers performed a pat-down search on Johnson, felt something, and at that point Johnson admitted to having three ecstasy pills hidden inside his underwear and Viagra pills in his pants pocket.  (Id. ¶¶ 16-17.)  After performing the pat-down, the officers asked Johnson whether he was hiding anything in his body cavities, to which Johnson replied that he was not.  (Id. ¶ 18.)  The Amended Complaint alleges that the Individual Defendants then strip searched Johnson, cut off his underwear and

---

[2] On the date of Johnson's arrest in February 2020, marijuana was included as a schedule one controlled substance under N.Y. Pub. Health L. § 3306.

performed a visual body cavity search of his anus.  (Id. ¶ 19.)  This visual body cavity search yielded no contraband.  (Id. ¶ 20.)

After Johnson was searched, he was transported to Central Booking in lower Manhattan where he was detained for several hours.  (Id. ¶ 23.)  Approximately twenty-four hours after his arrest, Johnson was arraigned in New York County Criminal Court, charged with criminal possession of a weapon in the fourth degree under New York Penal Law section 265.01, and released on his own recognizance.  (Id. ¶¶ 23, 30.)  Johnson claims, among other things, that he should have been released from the 32nd precinct with a desk appearance ticket rather than detained until his arraignment.  (Id. ¶ 24.)

PROCEDURAL HISTORY

Johnson filed the present action on June 14, 2021.  Johnson was granted leave to amend his complaint to add a claim for relief and re-plead certain issues in response to Defendants' pre-motion letter to dismiss (Docs 9 & 10), and Johnson filed his Amended Complaint on November 8, 2021 (Doc 14).  Accordingly, the Court assumes that the Amended Complaint provides the best and strongest formulation of Johnson's claims.

DISCUSSION

Johnson brings four claims under section 1983 against the defendants.  He alleges that (i) he was strip searched in violation of the Fourth Amendment, (ii) the decision to detain him rather than grant him a desk appearance ticket denied him due process of law, (iii) the Individual Defendants failed to intervene to prevent the constitutional violations, and (iv) the

City is liable for the constitutional violations.  The Court will address each claim in turn and begins with a discussion of the legal standard on a motion to dismiss for failure to state a claim.

A.  <u>Legal Standard for a Motion to Dismiss under Rule 12(b)(6).</u>

      Defendants move to dismiss the Amended Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P.  On a motion to dismiss, the Court accepts the complaint's well-pled factual allegations as true and draws all reasonable inferences in favor of the non-movant.  <u>In re Elevator Antitrust Litig.</u>, 502 F.3d 47, 50 (2d Cir. 2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Nevertheless, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" are not entitled to the presumption of truth.  <u>Iqbal</u>, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u>  "Under <u>Iqbal</u>, factual allegations must be sufficient to support necessary legal conclusions."  <u>Ruston v. Town Bd. For Town of Skaneateles</u>, 610 F.3d 55, 59 (2d Cir. 2010).

      In addition to the allegations contained in the complaint, a court may properly consider on a motion to dismiss "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007).

B.  <u>Defendants' Motion to Dismiss the Illegal Strip Search Claim will be Granted.</u>

Johnson's first claim is brought under section 1983 for a strip search in violation of his Fourth Amendment rights.  In particular, Johnson complains of the visual body cavity search performed by the Individual Defendants while he was detained at the 32nd precinct.  For the following reasons, Johnson's claim for unlawful strip search is dismissed.

The Fourth Amendment protects individuals against searches of their person without a warrant.  A search incident to an arrest, however, "constitutes an exception to the warrant requirement" imposed by the Fourth Amendment.  <u>Riley v. California</u>, 573 U.S. 373, 382 (2014).  Nevertheless, there are limitations upon the scope of an appropriate search incident to an arrest.  Indeed, whether a search incident to an arrest was lawful turns upon whether such search was "reasonable."  <u>See</u> <u>Vernonia Sch. Dist. 47J v. Acton</u>, 515 U.S. 646, 652 (1995).

Visual body cavity searches in particular are "invasive and degrading" and a "serious invasion of privacy," even more intrusive than a typical strip search.[3]  <u>Sloley v. VanBramer</u>, 945 F.3d 30, 38 (2d Cir. 2019).  An arresting officer may only conduct a visual body cavity search if he "has reason to believe, based on 'specific and articulable facts . . . , taken together with rational inferences from those facts,' . . . that an arrestee is secreting contraband inside a body cavity[.]"  <u>Id.</u> (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968)). To justify a visual body cavity search "the question is whether the criminal conduct for which a person was arrested speaks to the likelihood that he or she secreted contraband inside a body cavity."  <u>Id.</u> at 39.  Indeed, a visual body cavity search "must be based on reasonable suspicion to believe that the arrestee is secreting evidence inside the body cavity to be searched."  <u>Id.</u>  To determine

_____

[3] Visual body cavity searches, however, are less intrusive than manual body cavity searches.  <u>See</u> <u>Monroe v. Gould</u>, 372 F.Supp.3d 197, 204 (S.D.N.Y. Mar. 14, 2019) (comparing strip searches, visual body cavity searches, and manual body cavity searches).

whether a visual body cavity search was reasonable under the circumstances, "courts also consider whether the individual's preceding arrest was for a misdemeanor or felony, whether it involved drugs, whether the individual would soon be surrounded by other inmates or arrestees or housed alone, whether the search occurred privately, and whether the search was performed pursuant to reasonable suspicion or because of a blanket policy." Monroe v. Gould, 372 F.Supp.3d 197, 204 (S.D.N.Y. Mar. 14, 2019) (citing Gonzalez v. City of Schenectady, 728 F.3d 149, 162 (2d Cir. 2013)).

Defendants urge the Court to consider body-worn camera footage which purportedly shows video of the strip search of Johnson while he was detained.  But the Court declines to do so on a motion to dismiss.  The facts as pled in the Amended Complaint, however, establish that the visual body cavity search of Johnson was reasonable.

Johnson was arrested after Poupos and Davin "claimed" to find "a bag of marijuana and a knife" inside the vehicle in which Johnson was a passenger.  (FAC ¶ 13.) Johnson does not plausibly allege that Poupos and Davin did not actually find the marijuana and knife in the vehicle, and does not otherwise challenge the lawfulness of his arrest or that Poupos and Davin had probable cause to arrest him.  After transporting Johnson to the 32nd precinct, the Individual Defendants performed a pat-down of Johnson and felt an object or objects in his underwear, which Johnson then admitted were pills of ecstasy.  (Id. ¶ 17.)  Johnson denied concealing any contraband in his body cavities when asked by the Individual Defendants, but after finding the ecstasy pills concealed in Johnson's underwear the Individual Defendants performed a visual body cavity search of his anus.  (Id. ¶¶ 18-19.)

Because (1) the search was pursuant to a lawful arrest, (2) Poupos and Davin discovered a controlled substance, marijuana, and a knife during the arrest, (3) Poupos and Davin

found ecstasy pills concealed in Johnson's underwear and Viagra pills in his pants pocket, and (4) the visual body cavity search occurred in a holding cell at the 32nd precinct police station and not in public, the Court concludes that it was not constitutionally unreasonable for the Individual Defendants to perform the visual body cavity search.

In arguing that the visual body cavity search was not reasonable, Johnson relies on Bobbit v. Marzan, 16-cv-2042, 2020 WL 5633000 (S.D.N.Y. Sept. 21, 2020).  There, the body cavity search was held to be unreasonable because the officer found drugs concealed in the defendant's sock before performing a body cavity search of the defendant's anus.  Bobbit, 2020 WL 5633000 at *11 ("It is not reasonable to infer from the discovery of contraband in Plaintiff's sock that she was also concealing contraband on her body in locations where it could only be accessed by requiring her to fully disrobe, squat to expose her private parts, and use the bathroom, all in view of an officer.").  Here, however, it was reasonable to suspect that Johnson may be concealing contraband in his anus after finding drugs hidden inside his underwear, where the drugs were concealed in close proximity to his anus and the location of those drugs signaled his willingness to hide contraband in the region of his privates.

The Court concludes that Johnson has failed to plausibly allege that the visual body cavity search was unreasonable and unlawful under the totality of circumstances.  Accordingly, the defendants' motion to dismiss the claim will be granted.

C.  Johnson's Denial of Due Process Claim will be Dismissed.

Johnson alleges that in violation of his right to due process of law, Poupos and Davin detained him until arraignment instead of issuing him a desk appearance ticket.[4]  Notably, Johnson does not assert a claim for false arrest or unlawful seizure, and Johnson does not

---

[4] Although Johnson's pleading does not specify whether he is alleging a violation of procedural or substantive due process, his brief asserts a violation of procedural due process.  (See Pl.'s Opp. Mem. at 4-7.)

contend that Poupos and Davin did not have probable cause to arrest him or that his arrest was otherwise unlawful.  (See generally FAC.)  Rather, Johnson argues that he was denied his procedural due process rights because he had a state-created liberty interest in being released with a desk appearance ticket pursuant to New York Criminal Procedure Law section 150.20, and that he was deprived of that liberty interest without due process when the officers detained him until his arraignment.  (See Pl.'s Opp. Mem. at 6.)

        The Court will analyze the legal standard to be applied to Johnson's denial of procedural due process claim.  "In evaluating plaintiff['s] procedural due process claim, we analyze '(1) whether plaintiffs possessed a protected liberty or property interest, and, if so, (2) what process plaintiffs were due before they could be deprived of that interest.'" Adams v. Suozzi, 517, F.3d 124, 127 (2d Cir. 2008) (quoting Sealed v. Sealed, 332 F.3d 51, 55 (2d Cir. 2003)).  "Although some due process protections stem independently from the Fourteenth Amendment, state law may also create liberty or property interests entitled to due process protection."  Sealed v. Sealed, 332 F.3d at 55.

        At the outset, the Court notes that Johnson has cited to no cases which have held that New York Criminal Procedure Law section 150.20, as amended January 1, 2020, created a federally protected liberty interest in being released with a desk appearance ticket when arrested for a misdemeanor or violation.  The Court is also unaware of any cases, either within the Second Circuit or within the New York state courts, that have held that section 150.20 created a protected liberty interest.  Generally, a violation of a right protected by state law does not morph into a federal due process violation.[5]  Nevertheless, assuming that section 150.20 does create a

---

[5] See, e.g., Wharton v. City of New York, 08-cv-510, 2009 WL 700704, at *2 (E.D.N.Y. Mar. 13, 2009) ("Plaintiff's § 1983 claims based on violations of only state law must also be dismissed as § 1983 only applies to the deprivation of federal rights."); Daniels v. City of Binghamton, 947 F.Supp. 590, 596 (N.D.N.Y. Nov. 20, 1996) ("[I]t is well-established that § 1983 does not provide a remedy for official conduct that violates only state law.")

federally protected liberty interest, the Individual Defendants had probable cause to arrest

Johnson for a class D felony for which he was not entitled to a desk appearance ticket.

   The Court assumes that the first prong of the procedural due process analysis is

met and considers now the second prong; that is, whether Johnson was afforded appropriate

process pursuant to section 150.20.  This first requires a determination of the process afforded

under section 150.20.  Under section 150.20, "[w]henever a police officer is authorized pursuant

to section 140.10 of this title to arrest a person without a warrant for an offense other than a class

A, B, C or D felony . . . he shall . . . instead issue to and serve upon such person an appearance

ticket" subject to certain exceptions, none of which are applicable to the present circumstances.

See N.Y. Crim. P. L. § 150.20.  Thus, whether Johnson was afforded adequate process under

section 150.20 depends upon whether Poupos and Davin were "authorized pursuant to [New

York Criminal Procedure Law] section 140.10" to arrest Johnson for "a class A, B, C or D

felony[.]"  And whether Poupos and Davin were authorized to arrest Johnson for a felony

pursuant to section 140.10 depends upon whether Poupos and Davin had "reasonable cause to

believe" that Johnson had committed a felony.  See N.Y. Crim. P. L. § 140.20.  This necessitates

an analysis of probable cause.

   "An officer has probable cause to arrest when he or she has knowledge or

reasonably trustworthy information of facts and circumstances that are sufficient to warrant a

person of reasonable caution in the belief that the person to be arrested has committed or is

committing a crime."  Kee v. City of New York, 12 F.4th 150, 158 (2d Cir. 2021) (citing Jaegly

v. Couch, 439 F.3d 149, 151-52 (2d Cir. 2006)).  "Finely tuned standards such as proof beyond a

reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-

cause] decision."  Florida v. Harris, 568 U.S. 237, 243-44 (2013) (internal quotations and

citations omitted).  The probable cause test "is not reducible to precise definition or quantification" and instead turns on an evaluation of the "totality of the circumstances."  Id.  "To assess probable cause, a court considers only the facts 'available to the officer at the time of arrest and immediately before it.'"  Ashley v. City of New York, 992 F.3d 128, 136 (2d Cir. 2021) (quoting Stansbury v. Wertman, 721 F.3d 84, 89 (2d Cir. 2013)).  "Probable cause . . . is not a high bar: It requires only the 'kind of fair probability on which reasonable and prudent [people,] not legal technicians, act.'"  Kaley v. United States, 571 U.S. 320, 338 (2014) (internal citations omitted).

There is no allegation in the Amended Complaint that Johnson was arrested on February 13, 2020 by the Individual Defendants without probable cause. [6]  Johnson's arrest report indicates that he was arrested for, among other charges, two class D felonies: criminal possession of a controlled substance in the fifth degree under New York Penal Law section 220.06, and criminal possession of a weapon in the third degree under New York Penal Law section 265.02.  (Doc 19, Ex. B ("Arrest Report") at 1.)   The Arrest Report is properly considered in deciding this motion to dismiss.  The Arrest Report is a matter of public record and is considered only to determine the statements contained therein and not for the truth of the matters asserted.  See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); see also Shmueli v. City of New York, 424 F.3d 231, 233 (2d Cir. 2005).  Indeed, "[i]n considering a motion to dismiss, the Court may consider . . . public records such as Plaintiff's arrest reports, indictments, and criminal disposition data."  Corley v. Vance, 365 F.Supp.3d 407, 432 (S.D.N.Y. Mar. 27, 2019).

---

[6] Johnson only states in a conclusory fashion in his brief that the Arrest Report charges were "bogus" and that the officers were not "authorized" to arrest Johnson on the felony charges.  (Pl.'s Opp. Mem. at 4.)  The brief makes no claim of a lack of probable cause to arrest and cites to no authority that would support such a claim.

Johnson was ultimately arraigned on the charge of criminal possession of a weapon in the fourth degree, a class A misdemeanor under New York Penal Law section 265.01, for allegedly possessing a knife and a Billy club recovered from the vehicle.  (FAC ¶ 30.) Johnson contends that he was in fact only in violation of a different statute: "a [class A] misdemeanor under New York Penal [Law] Section 220.03," criminal possession of a controlled substance in the seventh degree.  (Pl.'s Opp. Mem. at 4.)  These points, however, are immaterial to the decision on the motion.

Section 150.20, on which Johnson's claim hinges, provides that a "police officer . . . authorized . . . to arrest a person without a warrant for an offense other than a class A, B, C or D felony . . . shall . . . instead issue" a desk appearance ticket.  Here, Johnson was arrested for a class D felony, and, thus, he had no right under section 150.20 to a desk appearance ticket.  The subsequent decision by the prosecutor to charge him with a misdemeanor and not a felony has no impact on the probable cause determination by the Individual Defendants to arrest Johnson for a class D felony.

The Amended Complaint alleges that Poupos and Davin "claimed" to have found a bag of marijuana and a knife inside the vehicle in which Johnson was a passenger and discovered ecstasy and Viagra pills hidden on Johnson's person, including certain pills concealed in his underwear.  Based on these circumstances, it was reasonable for Poupos and Davin to believe that Johnson "knowingly and unlawfully possesse[d] . . . a controlled substance with intent to sell it" in violation of New York Penal Law section 220.06, a class D felony.  The presence of the knife, bag of marijuana, Viagra pills and concealed ecstasy pills, taken together, established probable cause for Poupos and Davin to reasonably believe that Johnson had the

requisite "intent to sell" a controlled substance as is required under section 220.06, a class D felony.

        The Court concludes that Johnson has failed to plausibly allege that the failure to issue a desk appearance ticket upon his arrest for a class D felony deprived him of rights protected by the due process clause of the Fourteenth Amendment.  For this reason, the motion to dismiss Johnson's claim for denial of due process will be granted.

D.  Johnson's Claims for Failure to Intervene and Municipal Liability Cannot Stand Without an <u>Underlying Constitutional Violation and Therefore are Dismissed.</u>

        Johnson's remaining claims are for failure to intervene and municipal liability. For the following reasons, both claims are dismissed.

        Johnson's claim for failure to intervene fails because he has not plausibly alleged a constitutional violation.  "A plaintiff cannot succeed on a claim for failure to intervene under [section] 1983 when there is no underlying constitutional violation."  <u>Kayo v. Mertz</u>, 531 F.Supp.3d 774, 799 (S.D.N.Y. Mar. 31, 2021) (citing <u>Wieder v. City of New York</u>, 569 Fed.App'x 28, 30 (2d Cir. 2014)).  Because Johnson's claims for illegal strip search and denial of due process are dismissed, the claim for failure to intervene cannot proceed.  The motion to dismiss Johnson's failure to intervene claim will be granted.

        Generously construed, Johnson's claim for municipal liability under section 1983 is brought against the City of New York pursuant to <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1978).  As discussed above, Johnson's claims for the constitutional violations of unlawful strip search and denial of due process, which underlie Johnson's <u>Monell</u> claim, are dismissed.  "It is well-settled that a <u>Monell</u> claim cannot succeed without an underlying constitutional violation, and here there is no constitutional violation." <u>Mastromonaco v. Cty. Of Westchester</u>, 779 F.App'x 49, 51 (2d Cir. 2019) (citing <u>City of Los</u>

Angeles v. Heller, 475 U.S. 799 (1986)).  Accordingly, the motion to dismiss Johnson's

municipal liability claim will be granted.


CONCLUSION

The Court has considered all arguments presented by the parties, including those

not explicitly addressed herein.  Defendants' motion to dismiss the Amended Complaint is

GRANTED.  The Clerk is respectfully directed to terminate Doc 18 and enter judgment for the

defendants.


SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        September 12, 2022

- 13 -